IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MATT W. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 01-4040-CV-C-SOW-ECF |
| ) | |
| MISSOURI STATE HIGHWAY PATROL ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are defendant's Motion for Summary Judgment (Doc. #10), defendant's Suggestions in Support, plaintiff's Suggestions in Opposition, and defendant's Reply. For the reasons stated herein, defendant's motion for summary judgment is granted.

I. Background

Plaintiff Matt Brown is an employee of defendant Missouri State Highway Patrol ("MSHP"). Brown was promoted to Lieutenant in the Gaming Division of the MSHP in 1994. In 1998, Brown filed a lawsuit against the MSHP ("the first lawsuit") in this Court alleging that defendant had discriminated against him in denying "his request for relocation and transfer and by placing him in a position of lesser status, authority, responsibility and privilege and by denying promotions and equal treatment." Plaintiff also alleged that he was discriminated against "in retaliation for his exercise of his First Amendment rights by speaking out on matters of public concern."

On July 13, 1999, this Court granted defendant's motion to dismiss the First Amendment claim because plaintiff "Brown has alleged no facts from which a reasonable inference can be

drawn that he spoke out on any matter, let alone a matter of public concern." Then, on February 9, 2000, this Court issued an Order granting in part and denying in part defendant's motion for summary judgment.

In ruling on defendant's motion for summary judgment in the first lawsuit, the Court denied the motion as to plaintiff Brown's claims that he had been discriminated against when defendant refused to allow him to relocate to St. Louis. Similarly, the Court denied summary judgment on plaintiff Brown's claim that he had been discriminatorily reassigned to the position of Administrative Lieutenant. The Court granted summary judgment, however, on plaintiff Brown's claim of failure to promote. The Court held that plaintiff had failed to provide any evidence to support his claim that he was discriminatorily denied promotions to the position of captain.

The 1998 case proceeded to trial in May of 2000. On May 17, 2000, the jury returned a verdict finding in favor of defendant MSHP on plaintiff's claims of race discrimination.

Meanwhile, on February 28, 2000, plaintiff Brown filed a second lawsuit ("the second lawsuit"). This second lawsuit was filed in the United States District Court for the Eastern District of Missouri. A review of plaintiff's Complaint and the First Amended Complaint filed by plaintiff on March 16, 2000, reveals that plaintiff raised essentially the same allegations that he had raised in the first lawsuit. The second lawsuit was based upon a Charge of Discrimination plaintiff had filed in October of 1999; however, plaintiff had received his Right to Sue letter on this Charge in November of 1999. The Charge challenged the promotion of James Meissert instead of plaintiff to captain on February 1, 1999. In fact, plaintiff identified this promotion as one that he was wrongly denied in his interrogatory responses in the first lawsuit and it was one of the promotions covered by this Court's Order of February 9, 2000, ruling on defendant's motion for summary judgment. Accordingly, it would appear that the claim of failure to promote should

2

have been dismissed from the second lawsuit by the Eastern District based upon claim preclusion. The alleged discriminatory failure to promote plaintiff on February 1, 1999 had already been decided by this Court.[1]

Then, on June 27, 2000, plaintiff forwarded five new charges to the Equal Employment Opportunity Commission ("EEOC"). Each of the five charges challenged a promotion decision. The promotion decisions had been made between September 1, 1999 and March 1, 2000. After receiving Right to Sue letters on these five charges, plaintiff filed a Second Amended Complaint in the second lawsuit on November 7, 2000.

On January 1, 2001, following a motion by defendant, the United States District Court for the Eastern District of Missouri transferred the second lawsuit to this Court. Defendant now seeks summary judgment in the second lawsuit. The undisputed materials facts relevant to the pending summary judgment motion are as follows:

By statute, the decisions on who will be promoted to the ranks of lieutenant and captain within the MSHP are made at the discretion of the superintendent of the MSHP. Weldon Wilhoit has been the superintendent of the MSHP since September 1, 1997. Plaintiff Brown has never heard of Wilhoit making any type of racial remarks.

While a zone sergeant in Troop D in Springfield, plaintiff was removed from his zone responsibilities and assigned to work the desk at Troop D by then-Captain Steve Johnson.

---

[1] It appears from the docket sheet in the United States District Court for the Eastern District of Missouri ("Eastern District") that defendants did file a motion to dismiss and it was denied. The named defendants then filed a motion for summary judgment. Before the Eastern District ruled on the motion for summary judgment, defendants filed a motion for change of venue to this Court. The Eastern District granted the motion for change of venue and transferred the case to this Court on January 11, 2001. It is unclear to the Court why defendants waited approximately one year after the transfer to renew their motion for summary judgment in this Court rather than bringing it to the Court's attention during the initial scheduling conference.

According to Johnson, the decision to move plaintiff to the desk was because of poor supervision and poor performance. Plaintiff disputes that he was a poor supervisor and that he performed poorly.

After plaintiff was promoted to lieutenant, it became well known to the staff at the MSHP that plaintiff's supervisors were dissatisfied with plaintiff's performance. Defendant claims that since being promoted to lieutenant, plaintiff has had difficulty with every captain for whom he has worked and all have expressed concern about plaintiff's accountability. Plaintiff contends that he has received excellent ratings from his current captain and that there have been no difficulties with his current captain.

On or about February 1, 1999, Captain Larry Buschjost retired from his position as Captain of the Gaming Division with the MSHP and the position became vacant. Wilhoit offered this captain's position to Bill Nelson, an African American; however, Nelson declined the position.

In addition, while serving as Superintendent of the MSHP, Wilhoit has promoted two African-Americans to the rank of major. These are the first two African-Americans to hold the rank of major in the history of the MSHP. Wilhoit also promoted a woman to the position of captain, making her the first female captain in the history of the MSHP.

Prior to a recent vacancy in Springfield, no member of the MSHP staff had ever mentioned plaintiff as a candidate for any promotions to captain, although other African-American officers had been mentioned.

II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard

4

Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A plaintiff opposing a properly supported motion for summary judgment may not rest upon the allegations of her pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Id.

### III. Discussion

Defendant seeks summary judgment on plaintiff's current claims based upon the doctrine of issue preclusion. In addition, defendant argues that it has offered a legitimate reason for not promoting plaintiff to the position of captain and that plaintiff has not proffered any evidence showing that defendant's stated reason is pretextual.

A.  Claim Preclusion

The doctrine of *res judicata*, now referred to as claim preclusion, "applies to repetitive suits involving the same cause of action." Lundquist v. Rice Memorial Hospital, 238 F.3d 975, 977 (8th Cir. 2001)(citing C.I.R. v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed.2d 898 (1948)). When a final judgment has been rendered on the merits of an action, the same parties are precluded "from relitigating issues that were or could have been raised in that action." Id. (citing Federated Dep't Stores, Inc. v. Mottie, 452 U.S. 394, 398-99, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).

There are three elements to be considered in deciding whether claim preclusion bars a party from asserting a claim: "(1) whether the prior judgment was entered by a court of competent jurisdiction; (2) whether the prior decision was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." Id. (citing

5

Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1989)).  If these three elements are found to exist, then the parties are bound "'not only as to every matter which was offered and received to sustain or defeat the claim or demand, *but as to any other admissible matter which might have been offered for that purpose*.'"  Id. (emphasis added)(citing C.I.R. v. Sunnen, 333 U.S. at 597, 68 S.Ct. at 715 (citation omitted)).  In sum, the doctrine of claim preclusion "bars a party or one in privity from relitigating a claim in a second suit which was or could have been raised in the first lawsuit." DePugh v. Clemens, 966 F.Supp. 898, 902 (W.D. Mo. 1997)(citations omitted).  Claim preclusion "may be as to a judgment or as to some particular facts that have or could have been litigated."  Id. (citation omitted).

In his first lawsuit, filed in this Court in 1998, plaintiff raised a claim of failure to promote alleging that he was denied promotions to captain and a claim that he was discriminated against "in retaliation for his exercise of his First Amendment rights by speaking out on matters of public concern."  This Court had competent jurisdiction over both of these claims.  On July 13, 1999, this Court dismissed the First Amendment claim with prejudice and on February 9, 2000, this Court granted summary judgment to defendant on plaintiff's failure to promote claim.

Less than three weeks after this Court's Order on defendant's motion for summary judgment was issued, plaintiff filed a new lawsuit in the Eastern District of Missouri alleging identical claims of failure to promote and retaliation based on the exercise of plaintiff's First Amendment rights against the same defendants named in the first lawsuit.  Claim preclusion bars plaintiff from re-litigating these claims.

First, the promotion of James Meissert was specifically challenged in the first lawsuit. While the second lawsuit was based upon a Charge of Discrimination plaintiff had filed in October of 1999, plaintiff had received his Right to Sue letter on this Charge in November of 1999

and had identified this promotion as one that he claimed he was wrongly denied and was challenging in the first lawsuit. Plaintiff cannot relitigate this claim.

As previously discussed, in May of 2000, a jury returned a verdict in favor of defendants on plaintiff's remaining claims in the first lawsuit. Thereafter, on June 27, 2000, plaintiff filed five new Charges of Discrimination with the EEOC challenging the promotions of James McNiell on September 1, 1999; John W. Elliott on October 1, 1999; Dale Schmidt on February 1, 2000; Robert Bloomberg on February 1, 2000; and Bradley Jones on March 1, 2000. As an initial matter, the Court notes that plaintiff was aware of four of these promotion decisions <u>before</u> this Court's ruling on defendants' motion for summary judgment and <u>before</u> he filed his second lawsuit in the Eastern District. Furthermore, plaintiff was aware of the final promotion decision he is challenging <u>before</u> he filed an Amended Complaint in the second lawsuit on March 16, 2000 and, following discovery, plaintiff has now withdrawn his challenge to the promotion of Bradley Jones on March 1, 2000. Yet, plaintiff did not raise any allegations with respect to these challenged promotions until over one month <u>after</u> the jury's verdict against him in the first lawsuit.

Plaintiff was aware of all four of the promotion decisions at issue while the first lawsuit was pending. Plaintiff had alleged a claim of failure to promote. These other four promotions were admissible matters which plaintiff could have offered to support his failure to promote claim. <u>Lundquist v. Rice Memorial Hospital</u>, 238 F.3d at 977. Plaintiff is barred by the doctrine of claim preclusion from relitigating these claims in a second suit because they could have been raised in the first lawsuit. <u>DePugh v. Clemens</u>, 966 F.Supp. at 902. Similarly, plaintiff has not offered any additional or new evidence to support his First Amendment claim.

Plaintiff's second lawsuit should have been dismissed at the outset and the addition of these four instances of an alleged failure to promote based upon racial discrimination and

7

retaliation does not change that result because plaintiff was aware of these promotion decision while the first lawsuit was pending.

Plaintiff's justification for filing the second lawsuit is that this Court lacked jurisdiction to consider the issue of promotion because it was not alleged with specificity in his original EEOC Charge and, therefore, not covered by his first Right to Sue letter. The fact remains that plaintiff pled a failure to promote claim in his original Complaint in the first lawsuit. Also, during the pendency of the first lawsuit, plaintiff filed a Charge of Discrimination on the February 1, 1999 promotion of James Meissert, received a Right to Sue letter on that charge, and it was litigated during discovery and included in the briefing on defendant's motion for summary judgment in the first lawsuit. In fact, when plaintiff filed his Charge of Discrimination on the Meissert promotion in October of 1999, he would have been aware of two of the promotions he currently challenges, McNeill and Elliot, yet plaintiff did not raise any allegations regarding those promotions in his Charge.

Furthermore, once a Right to Sue letter has been received and a federal action has been filed, "allegations in the judicial complaint may encompass any kind of discrimination 'which can reasonably be expected to grow out of the charge of discrimination . . . including new acts which occurred during the pendency of the proceedings before the Commission.'" Page v. ECC Management Services, 1997 WL 762789 (E.D. Pa. 1997)(citations omitted). Plaintiff's allegations on the four additional promotions are reasonably related to the claims that were pending before this Court in the first lawsuit. Plaintiff is deemed to have exhausted his administrative remedies as to allegations that are like or reasonably related to the substance of the charges taken to the EEOC. Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1996). Accordingly, plaintiff could have brought all of his allegations on the additional promotion decisions in the first

8

lawsuit.

The Court notes that defendant suggests that plaintiff "will continue to file lawsuits following every single captain's promotion for the foreseeable future." This may be true. The Court's ruling in this case is not meant to suggest that plaintiff is precluded from bringing a future claim that he was discriminatorily denied a promotion. The difficulty for plaintiff in this case is that after he received an adverse decision from this Court on a claim that he had pled for failure to promote, he went to a different Court and filed a virtually identical Complaint. Then, after an adverse jury verdict, plaintiff went back to the EEOC and filed additional charges, based on events that had occurred while the first lawsuit was pending, in an effort to relitigate his claims in a different court. This is exactly the type of result that the doctrine of claim preclusion is supposed to prevent.

B. <u>Failure to Promote</u>

Even if this Court is incorrect in finding that the doctrine of claim preclusion bars plaintiff from bringing his current claims of failure to promote, retaliatory failure to promote, and retaliation for the exercise of his First Amendment rights, plaintiff's claims fail on the merits.

Plaintiff's claims must be evaluated under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973). This analysis requires plaintiff to satisfy his initial burden of establishing a *prima facie* case of race discrimination. <u>Rose-Maston v. NME Hospitals, Inc.</u>, 133 F.3d 1104, 1107 (8th Cir. 1998)(citations omitted). Once plaintiff comes forward with a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>Id</u>. "Once the employer articulates such a reason, the presumption of discrimination

9

disappears entirely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus." Id. (citation omitted).

In order to establish a *prima facie* case of failure to promote, plaintiff Brown must demonstrate that (1) he is a member of a protected group; (2) that he was qualified and applied for a promotion to an available position; (3) that he was rejected; and (4) that a similarly qualified employee, not part of a protected group, was promoted instead. Rose-Maston, 133 F.3d at 1109 (citing Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996); Lidge-Myrtil v. Deere & Co., 49 F.3d 1308, 1310 (8th Cir. 1995)). It does not appear that plaintiff can present even a *prima face* case of discriminatory failure to promote. While plaintiff is a member of a protected group who was eligible for the promotions to captain that he has identified and did not receive the promotions, plaintiff has failed to demonstrate that he was "similarly qualified" to the individuals who were promoted to captain. Discovery has been completed and plaintiff has failed to establish that any of the individuals who were promoted to captain's positions were equally or less qualified than him. Defendant claims, and plaintiff does not dispute, that plaintiff did not even investigate the qualifications of the individuals who were promoted when he deposed them. Plaintiff has made no effort to compare his qualifications to those of the individuals who received the challenged promotions.

Furthermore, defendant has offered a legitimate, nondiscriminatory reason for not promoting plaintiff: that plaintiff's job performance was inconsistent, that shortcomings have existed in plaintiff's work ethic and in his supervisory skills, and that plaintiff has had problems with his supervisors. Defendant contends that plaintiff's race played no part in the decision-making process. There is no evidence of any racial animus on the part of the decision-maker, Colonel Wilhoit. In fact, Wilhoit has promoted a number of African-Americans and other

10

minorities.

Plaintiff has not offered any evidence of pretext to rebut the legitimate, nondiscriminatory reason offered by defendant for not promoting him. Accordingly, defendant's motion for summary judgment on plaintiff's claim of discriminatory failure to promote must be granted.

C.     Retaliatory Failure to Promote

Plaintiff also alleges that defendant retaliated against him by not promoting him to a captain's position because he filed Charges of Discrimination with the EEOC and because he filed the first lawsuit. To establish a *prima facie* case of retaliation, plaintiff must demonstrate that he engaged in a protected activity, that there was a subsequent adverse action by the employer, and that there is a causal connection between the protected activity and the subsequent adverse action. 42 U.S.C. §2000e-3(a); Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995); Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999)(en banc).

Plaintiff has not identified any *adverse* employment actions that he has suffered as a result of his filing of EEOC Charges and a subsequent lawsuit. As discussed above, plaintiff has failed to prove his failure to promote claim and plaintiff has not offered *any* evidence to suggest that the failure to promote him was retaliatory. Rather, plaintiff continues to assert that he was qualified to be promoted to captain without examining whether or not the individuals who were promoted were similarly qualified or better qualified.

There is absolutely no evidence in the record suggesting that the failure to promote plaintiff was racially motivated, discriminatory, or retaliatory. Plaintiff has not established a causal connection between his protected activities and the alleged adverse action. In fact, plaintiff has not suffered any adverse actions. There has been no change in the terms and conditions of plaintiff's employment. Plaintiff simply believes that he should have been promoted to a position

11

with different terms and conditions of employment; however, defendant has proffered deposition testimony and sworn affidavits from members of the MSHP explaining that plaintiff was not promoted based upon the legitimate, nondiscriminatory reasons discussed above. Again, plaintiff has failed to explain how these reasons are pretextual. He does not even begin to compare himself to the individuals who were promoted other than to identify two disciplinary actions against two of the individuals who were promoted to captain. This is insufficient and defendant's motion for summary judgment on this claim must be denied.

D. Retaliation for the Exercise of Free Speech Rights

Finally, plaintiff claims that he was retaliated against for exercising his free speech rights; however, plaintiff raised this claim in the first lawsuit. In fact, in response to discovery in this lawsuit, plaintiff gave an identical response to the one he had given in the first lawsuit when asked to identify "each and every exercise of your First Amendment rights . . . for which you assert retaliation took place." This claim was considered and dismissed during the first lawsuit. Plaintiff is precluded from raising this claim again. Defendant's motion for summary judgment on this claim is granted.

IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that defendant's Motion for Summary Judgment (Doc. #10) is granted and this case is dismissed with prejudice.

S/Scott O. Wright

SCOTT O. WRIGHT
Senior United States District Judge

Dated: 4-11-02